NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0544n.06

No. 21-5680

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>HORACIO RAUL ESTRADA-ELIAS, aka Horacio Estrada, aka Mario Alberto Estrada-Elias, aka Alberto Mario Estrada-Elias, aka Rudy Horacio Estrada,<br><br>    Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY<br><br><br>ORDER</td></tr>
</table>

Before: MOORE, GILMAN, and KETHLEDGE, Circuit Judges.

Horacio Raul Estrada-Elias, a ninety-year-old man suffering from a terminal illness, appeals the district court's order denying his motion for compassionate release filed pursuant to 28 U.S.C. § 3582(c)(1)(A)(i). Estrada-Elias has spent fifteen years in prison for conspiracy to distribute marijuana. Because of his illness, Estrada-Elias is bedridden. He has never been convicted of a violent crime and has not received a single disciplinary infraction in prison. The warden of the prison in which Estrada-Elias is incarcerated agrees that Estrada-Elias should be released from custody. Despite Estrada-Elias's age, illness, incapacity, and lack of any violent convictions, the district court denied his compassionate-release motion, finding that life in prison is "the only sentence that would be appropriate and that would protect the public" from this ninety-year-old terminally ill grandfather. R. 210 (Dist. Ct. Order at 14) (Page ID #2214) (quotation

omitted). We hold that the district court abused its discretion in denying Estrada-Elias's compassionate-release motion.

Estrada-Elias was confined at the Federal Correctional Institution, Phoenix, Arizona, but is currently incarcerated at the Federal Medical Center, Rochester, Minnesota. In 2007, Estrada-Elias pleaded guilty to conspiracy to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. R. 152 (Plea Agreement) (Page ID #616). The district court sentenced Estrada-Elias to life imprisonment on account of prior convictions for felony drug offenses under 21 U.S.C. §§ 841(b)(1)(A)(vii) and 851. R. 151 (Criminal Judgment) (Page ID #612–13). Without those prior convictions, Estrada-Elias's guidelines range would have been 151 to 188 months, but because the statutory minimum sentence under § 841(b)(1)(A) exceeded the guidelines range, life imprisonment also became his guidelines sentence. *See* USSG § 5G1.1(b). Estrada Elias was not convicted of any crimes between 1982 and 2007.

In May 2020, on his own accord, the warden of FCI Phoenix filed an internal administrative request in the Bureau of Prisons (BOP) for Estrada-Elias to be released. Relying on the findings of prison medical professionals, the warden's report highlighted that Estrada-Elias "suffers from recurrent right pleural effusion," that "one and a half liters of fluid were removed from his right lung," that "he requires oxygen, due to recurrent shortness of breath," and that "[h]ospice has been recommended." R. 203-1 (Warden Mem. at 1) (Page ID #1199). Based on Estrada-Elias's terminal medical condition, the warden determined that Estrada-Elias qualified for compassionate release under the BOP's Compassionate Release Procedures Program Statement 5050.50 and 18 U.S.C. § 3582(d)(2)(A) and (d)(1). *Id.* The Office of the General Counsel for the BOP deemed Estrada-Elias eligible for compassionate release under the Program Statement but nonetheless

denied the request because of the "seriousness of the offense" and his involvement in prior offenses "since the 1970s." R. 203-1 (Mem. from General Counsel to Warden) (Page ID #1216–17).

In May 2021, Estrada-Elias filed a motion for compassionate release in the district court pursuant to § 3582(c)(1)(A)(i). Estrada-Elias argued that his terminal medical conditions—including "congestive heart failure with associated pleural effusion requiring recurrent thoracenteses and previous indwelling pleural catheter, atrial fibrillation, chronic kidney disease stage 3, hypothyroidism, latent tuberculosis, hypertension, and recent infection with COVID-19"—as extraordinary and compelling reasons for compassionate release. R. 203 (Compassionate Release Mot. at 9) (Page ID #1185). Estrada-Elias also argued that the sentencing factors described in 18 U.S.C. § 3553(a) supported compassionate release. *Id.* at 16–20 (Page ID #1192–96). The government responded in opposition. R. 208 (Opp'n to Compassionate Release Mot.) (Page ID #2177).

Before Estrada-Elias could file a reply within the fourteen-day period under local court rules, the district court issued an order denying the motion. R. 210 (Dist. Ct. Order) (Page ID #2201). The district court first assumed without deciding that Estrada-Elias's "dire" medical condition qualified as an extraordinary and compelling reason. *Id.* at 11–12. (Page ID #2211–12). The court determined, however, that the § 3553(a) factors did not support a reduction of Estrada-Elias's sentence. In so holding, the district court emphasized that "the only sentence that would be appropriate and that would protect the public [is] a life sentence," considering the "quantities of marijuana involved." *Id.* at 12, 14 (Page ID #2212, 2214). The district court also dismissed Estrada-Elias's age and illness, noting that the fact that he committed the marijuana conspiracy in his seventies proves that "older [people] can create as much damage as younger folks can." *Id.* at 12 (Page ID #2212) (quotation omitted). Finally, the court surmised that Estrada-Elias may have

been involved in criminal activity between his convictions and was "not persuaded that the fact that this sentence would be different if it were imposed today is a reason for a reduction." *Id.* at 13 (Page ID #2213). Estrada-Elias filed a timely notice of appeal.

We review for an abuse of discretion the district court's decision not to grant compassionate release. *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020). That discretion is "substantial," *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020), but "'discretion' does not mean 'whim.'" *Jones*, 980 at 1112 (quoting *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020)). "The familiar yardstick of reasonableness is useful" to "measure an abuse of discretion." *United States v. Foreman*, 958 F.3d 506, 515 n.4 (6th Cir. 2020). A district court thus abuses its discretion when it engages in a procedurally or substantively unreasonable analysis. *Id.* at 514–15. "[I]n gauging the substantive reasonableness of a sentence, we ask whether the sentencing court gave reasonable *weight* to each relevant factor." *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019). "If 'the court placed too much weight on some of the § 3553(a) factors and too little on others,' the sentence is substantively unreasonable" even if the district court considered all of the relevant sentencing factors. *Id.* (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)).

The district court's analysis of the 18 U.S.C § 3553(a) factors leaves us "with a definite and firm conviction that the district court committed a clear error of judgment." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013). The district court unreasonably analyzed "the nature and circumstances of the offense and the history and characteristics" of Estrada-Elias. 18 U.S.C § 3553(a)(1). By doing so, the district court "failed to give 'reasonable weight to each relevant [§ 3553(a)] factor.'" *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *Boucher*, 937 F.3d at 707). According to the district court, because Estrada-Elias was in

his seventies when the marijuana conspiracy began, his current age and frailty do not matter—he might re-offend while confined to his bed at ninety years old. R. 210 (Dist. Ct. Order at 12) (Page ID #2212). Concluding that Estrada-Elias is likely to re-offend is incongruous with the fact that he "has such significant fragility that he is unable to perform activities of daily living and has difficulty breathing and walking due to his significant heart failure." R. 203-3 (Decl. of Dr. Mukta Baweja at 5) (Page ID #1233).

Relegating the facts regarding Estrada-Elias's rehabilitation to a rote acknowledgment in its factual background, moreover, the district court all but ignored that Estrada-Elias is an "exemplary inmate" whose family is eager to support him in the last months of his life. R. 210 (Dist. Ct. Order at 7) (Page ID #2207). In the fifteen years that he has been in prison, Estrada-Elias has not committed a single disciplinary infraction and has participated in numerous rehabilitation programs. *Id.* In fact, applying these facts to the Bureau of Prisons' internal risk-assessment tool reveals that Estrada-Elias's risk of recidivism is negative. R. 203-1 (BOP Risk Assessment) (Page ID #1198). Those facts were not even mentioned in the district court's analysis of Estrada-Elias's recidivism risk.

The district court, moreover, explained away the twenty-five-year gap between Estrada-Elias's instant offense and prior convictions by postulating about the unproven crimes he might have committed when he voluntarily removed himself to Mexico in the late 1980s. R. 210 (Dist. Ct. Order at 13) (Page ID #2213). While minimizing Estrada-Elias's low risk of recidivism, the district court placed undue emphasis on the seriousness of the offense. This emphasis was particularly misplaced given that, if imposed today, Estrada-Elias's guidelines range would not have required the application of a statutory minimum sentence, much less one of life imprisonment. Because the guidelines calculation accounts for public-safety concerns and the risk

of recidivism, a district court must provide a "sufficiently compelling justification" to not provide at least some sentence reduction. *United States v. Smith*, 959 F.3d 701, 703-04 (6th Cir. 2020). The district court's discussion of Estrada-Elias's criminal history did not provide that justification here.

By overly emphasizing Estrada-Elias's history of nonviolent crimes, ignoring the low likelihood that Estrada-Elias will re-offend, and mischaracterizing the reality of the gap between Estrada-Elias's present and prior convictions, the district court engaged in a substantively unreasonable balancing of the § 3553(a) factors and therefore abused its discretion.

The district court also assumed, without deciding, that Estrada-Elias's health conditions constitute extraordinary and compelling circumstances. *Id.* at 11 (Page ID #2211). On remand, the district court must decide whether Estrada-Elias's health is so severely declining as to constitute an extraordinary and compelling circumstance warranting his release. We note that it seems to us that the district court correctly characterized Estrada-Elias's medical condition as "dire." *Id.* After all, the warden of FCI Phoenix determined that Estrada-Elias "meets the guidelines stipulated in Program Statement 5050.50, Terminal Medical Condition," which "include assessment of the primary (terminal) disease, prognosis, impact of other serious medical conditions of the inmate, and degree of functional impairment." R. 203-1 (Warden Mem. at 1) (Page ID #1199); BOP Program Statement 5050.50(3)(a). Although BOP policy statements are no longer binding upon the district court, a prisoner who meets these stringent guidelines based on the unanimous opinions of multiple physicians has provided ample evidence to support a sentence reduction. This is especially so when the medical conditions underpinning the terminal illness include "congestive heart failure with associated pleural effusion requiring recurrent thoracenteses and previous indwelling pleural catheter, atrial fibrillation, chronic kidney disease stage 3,

hypothyroidism, latent tuberculosis, hypertension, and recent infection with COVID-19" related to a "decline in organ function, including the heart and kidneys." R. 203-3 (Decl. of Dr. Mukta Baweja at 2) (Page ID #1230).

One final point is worth mentioning. Our dissenting colleague argues that we should defer to the district court because it "has spent much more time on Estrada-Elias's case than any member of our court has." Dissent at 1. But the warden, who has spent even more time with Estrada-Elias than the district court has, recommends that Estrada-Elias be released from custody.

In sum, the district court abused its discretion in failing to perform a reasonable application of the § 3553(a) factors. Because the district court did not decide whether Estrada-Elias's health conditions constitute extraordinary and compelling reasons to justify his release, we must afford it the opportunity to do so. We therefore REVERSE and REMAND for proceedings on an expedited basis consistent with this opinion.

KETHLEDGE, Circuit Judge, dissenting. The law of our circuit is that "district courts have wide latitude to deny compassionate release based on the seriousness of the underlying offense[.]" *United States v. Wright*, 991 F.3d 717, 719 (6th Cir. 2021). That rule is hard to square with our decision here today. And to describe Estrada-Elias's offense as mere "conspiracy to distribute marijuana," Order at 1, significantly understates the "seriousness of the offense." Order at 1, 5. The district court knows the case better than we do, and described Estrada-Elias's criminal history and offense conduct as follows:

> Dating back to at least the 1970s, [Estrada-Elias] facilitated drug transactions involving striking quantities of controlled substances: one-hundred-kilogram bricks of marijuana; ounces of cocaine by the tens of thousands; and hundreds of grams of heroin. Tractor-trailers, train cars, warehouses, vans, boats, crates, and pallets are not vessels often required to accommodate quantities of drugs, but Estrada-Elias engaged in transactions that required all of them. . . . [Here,] Estrada-Elias'[s] five-year conspiracy came to an end when he attempted to collect $2,200,000.00 in exchange for a 2,600-pound marijuana delivery that was facilitated by a government informant.

R. 210 at 1-2 (citations omitted). The district court also explained Estrada-Elias's putative lapse in criminal activity between 1982 and 2005:

> [H]e was imprisoned until 1986. And after he was released, he absconded to Mexico in violation of his conditions of parole. When a warrant was issued for his arrest in 1987, he drafted a letter to his Probation Officer indicating that he had voluntarily deported himself. The current offense stemmed from allegations of drug-trafficking dating to 1999, so counsel is, at best, correct that Estrada-Elias abstained from criminal activity *in the United States* for 12 years.

*Id*. at 13 (citations omitted).

There are good reasons why we should defer to district courts as to decisions like this one. Here, the district court has spent much more time on Estrada-Elias's case than any member of our court has. Nor has any member of this court spent time with Estrada-Elias in open court. Granted, Estrada-Elias presents a sympathetic case; but he leaves a great deal of human wreckage in his

wake.  The question here is therefore close—which means that, under the relevant law, the decision was for the district court to make.

Some life sentences should remain life sentences, even if the inmate grows frail at the end. The district court was within its discretion to conclude as much here.  I respectfully dissent.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk